# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SISTERSONG WOMEN OF COLOR REPRODUCTIVE JUSTICE COLLECTIVE *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No.: 1:19-cv-02973-SCJ |
| vs. | ) |
| BRIAN KEMP *et al.*, | ) |
| Defendants. | ) |

# PLAINTIFFS' REPLY BRIEF IN RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' <u>MOTION FOR PRELIMINARY INJUNCTION</u>

# INTRODUCTION

The State Defendants and the District Attorneys represented jointly with them ("Defendants")[1] do not, because they cannot, plausibly argue that H.B. 481 ("the Act")[2] passes constitutional muster: under a half century of binding Supreme Court precedent, Georgia "may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992). Defendants do not even try to refute the devastating harm the Act would impose, condemning Georgia women, particularly Black women, to increased morbidity and mortality from the denial of medical care including abortion and miscarriage management. Plaintiffs thus remain likely—indeed, certain—to succeed on the merits of their claims that H.B. 481 must fall because it bans abortion prior to viability and is unconstitutionally vague; because banning abortion is the Act's main purpose, the other sections cannot be severed;

---

[1] Plaintiffs here reply to these Defendants' opposition, Defs.' Resp. Opp'n Pls.' Mot. Prelim. Inj., ECF No. 74 ("Defs.' Br."). Plaintiffs reply separately to Defendant Boston's opposition, ECF No. 71. Plaintiffs do not reply separately to Defendant Howard, who—based on his "responsibility . . . to seek justice" and "controlling precedent recognizing . . . the important rights" at stake—does not oppose an injunction. ECF No. 75.

[2] H.B. 481 is Exhibit A to the Verified Complaint, ECF No. 1 ("Compl.").

Plaintiffs' irreparable harm showing is unanswered; and the equities therefore tip decidedly in their favor. This Court should grant Plaintiffs' motion.

## ARGUMENT

### I. PLAINTIFFS HAVE ESTABLISHED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

**A. H.B. 481 Bans Abortion at a Pre-Viability Point in Pregnancy.**

H.B. 481 violates the rule that states cannot ban abortion before viability:

> Our adoption of the undue burden analysis does not disturb the central holding of *Roe v. Wade*, and we reaffirm that holding. Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.

*Casey*, 505 U.S. at 879.[3] H.B. 481 bans abortion months before viability, *see* Compl. ¶ 56, and Defendants do not dispute this critical fact, which is the only relevant fact in this case. The Court's inquiry on Plaintiffs' likelihood of success on the merits of this claim can end there.

Defendants' arguments to the contrary are unsupportable and unavailing. **First**, the Court should dismiss out of hand the argument that the law is "unsettled," Defs.' Br. at 10, and that the Supreme Court "has not directly

---

[3] Because this rule applies "[r]egardless of . . . exceptions," *id.*, the Act's (cruelly narrow) exceptions cannot save it. *See* Defs.' Br. at 16–17 (suggesting otherwise).

2

addressed th[e State] interest's precise contours," *id*. at 8. The law could not be more settled and precise: Georgia cannot ban abortion prior to viability, a *per se* rule for which Plaintiffs cited plentiful authority. *Compare* Pls.' Mem. Supp. Mot. Prelim. Inj. Relief ("Pls.' Br.") at 11–12 & n.12, ECF No. 24-1 (citing numerous cases, including *Casey*); *with* Defs.' Br. at 9 (asserting that "Plaintiffs cite no authority for" the *per se* rule, and suggesting it does not exist).[4]

**Second**, the ban on abortion once there is "detectable" cardiac activity violates the *per se* rule, regardless of whether it applies before, at, or slightly after six weeks. Defendants dispute neither that cardiac activity is "detectable" at six weeks via ultrasound, nor that viability occurs months later. *See* Compl. ¶¶ 50, 56; Defs.' Br. at 6 & n.2. Instead, Defendants make the bizarre and immaterial suggestion that "detectable" means "detected," and that doctors may manipulate that standard by deliberately choosing equipment that may not detect cardiac

---

[4] Since Plaintiffs filed their opening brief, two more courts have preliminarily enjoined bans at pre-viability points in pregnancy. *See Reproductive Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*, No. 2:19-cv-4155-HFS, 2019 WL 4023721, at *6 (W.D. Mo. Aug. 27, 2019) (preliminarily enjoining 8-, 14-, 18-, and 20-week bans), *appeal docketed*, No. 19-2882 (8th Cir. Sept. 3, 2019); *Little Rock Family Planning Servs. v. Rutledge*, No. 4:19-cv-0449-KGB, 2019 WL 3679623, at *48 (E.D. Ark. Aug. 6, 2019) (preliminarily enjoining 18-week ban), *appeal docketed*, No. 19-2690 (8th Cir. Aug. 9, 2019).

activity until later in pregnancy: eight or nine weeks for some women and "may[be]. . . until 12 weeks" for others.[5] Defs.' Br. at 5–6, 16. Even if Defendants' proposed interpretation of "detectable" were plausible—which it is not—it would not save the Act, since it is undisputed that viability occurs after 12 weeks LMP. *See* Defs.' Br. at 14 (header referring to Act's "restriction on pre-viability abortions"); *see also*, *e.g.*, *Casey*, 505 U.S. at 860 (viability occurs at 23 to 24

---

[5] To clarify: Defendants do not (and cannot) dispute that cardiac activity is normally *detectable* at approximately six weeks via (vaginal) ultrasound. Compl. ¶ 50. Instead, Defendants assert that physicians could use an abdominal ultrasound, which "has a less-than-50% chance of detecting a heartbeat before 9 weeks LMP, and *may* not do so until 12 weeks." Defs.' Br. at 5–6 & n.2 (emphasis added); *see also id*. at 16 ("detecting" cardiac activity "*may* not occur until 8 to 12 weeks") (emphasis added). But the Act's plain language bans abortion once cardiac activity its "detectable," and no state or court addressing such a ban has offered or entertained such a fanciful construction as Defendants'. *See, e.g.*, *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 772–73 (8th Cir. 2015) (affirming permanent injunction of 6-week ban based on detectable cardiac activity), *cert. denied*, 136 S. Ct. 981 (2016); *Preterm-Cleveland v. Yost*, No. 1:19-cv-00360, 2019 WL 2869640, at *3–6 (S.D. Ohio July 3, 2019) (preliminary injunction regarding same); *Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d 549, 552–53 (S.D. Miss. 2019) (same), *appeal docketed*, No. 19-60455 (5th Cir. June 24, 2019); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:19-CV-178-DJH, 2019 WL 1233575, at *2 (W.D. Ky. Mar. 15, 2019) (TRO regarding same). Indeed, Defendants' construction would lead to absurd results—allowing physicians to determine if cardiac activity is "detected" using *any* equipment, such as the ancient Pinard, which detects cardiac activity by eighteen weeks, *see* Ginger Breedlove, "What is the Pinard? – The World's Oldest Tool For Hearing Fetal Heartbeats," June 15, 2018, http://www.growmidwives.com/what-is-a-pinard-the-worlds-oldest-tool-for-hearing-fetal-heartbeats/.

weeks); *Isaacson v. Horne*, 716 F.3d 1213, 1225 (9th Cir. 2013) (same is "undisputed"); *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 137 (3d Cir. 2000) (viability "typically" occurs "after about twenty-four weeks"); *Jackson Women's Health Org. v. Currier*, 349 F. Supp. 3d 536, 539–40 (S.D. Miss. 2018) (same, citing "established medical consensus"), *appeal docketed*, No. 18-60868 (5th Cir. Dec. 17, 2018). Thus, even under Defendants' implausible construction of "detectable," the Act fails under decades of binding precedent.

**Third**, no alternative standard, and no state interest, can save the Act. Trying to evade the *per se* rule that applies to pre-viability bans, Defendants claim that the Act is "not a 'ban,'" but merely a "restriction." Defs.' Br. at 9. It is a ban. *See, e.g., Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) (rejecting assertion that a twelve-week ban is "a regulation, not a ban"). But, in any event, the Act would likewise fail the test for abortion restrictions, which is *Casey*'s "undue burden" test.[6] No doubt for that reason, Defendants try to invent a new standard,

---

[6] The Act would fail *Casey*'s undue burden test because it imposes not merely a substantial obstacle, but an absolute obstacle, at a pre-viability point in pregnancy. *See Casey*, 505 U.S. at 877. Defendants thus rely to no avail on cases upholding regulations that imposed no substantial obstacle to abortion. For example, far from "refut[ing]" the rule that pre-viability bans are *per se* unconstitutional, Defs.' Br. at 9, *Gonzales v. Carhart* upheld a restriction on one rarely-used method of second-trimester abortion only because the Court found that it had no effect on the most

insisting that—because the Act advances a purportedly "novel" interest in "unborn . . . life" rather than "potential life"—it is subject not to the undue burden test, but rather to a lower standard, suggesting intermediate scrutiny. Defs.' Br. at 9–10, 12. There is nothing novel here: in establishing the undue burden test, *Casey* refers repeatedly to "the State . . . interest in protecting . . . *unborn*" life. 505 U.S. at 873 (emphasis added); *id.* at 877, 878 (same). Defendants' claimed distinction has no legal import.

Regardless of Defendants' nomenclature, H.B. 481 fails because "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." *Id.* at 846. A woman's "right to terminate her pregnancy prior to viability is categorical," and courts "cannot reweigh" that "right against the State's interest." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 305, 307 (7th Cir. 2018), *cert. denied in relevant part sub nom.*, *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019).

### B. H.B. 481 Is Unconstitutionally Vague.

Defendants do not even attempt to dispute that H.B. 481's Personhood Definition would apply throughout the Georgia Code, or that it would alter the

---

common, standard method of second-trimester abortion—that is, only because it imposed no obstacle to pre-viability abortion. 550 U.S. 124, 154 (2007).

meaning of numerous provisions in unclear and untold ways. Defendants argue only that (1) Plaintiffs lack standing to bring the vagueness claim, and (2) the vagueness claim is unlikely to succeed because it is "implausible" that the Personhood Definition could be applied to prohibit "pre-heartbeat abortions." Defs.' Br. at 17–21. Defendants' arguments fail on their face, and fail to address Plaintiffs' core vagueness concerns—which include lack of clarity about the law's impact on *post*-cardiac-activity abortions and other medical care for pregnant women.

### 1. Plaintiffs have standing to assert that H.B. 481 is vague.

Plaintiffs have established standing to bring their vagueness claim by demonstrating that "(1) [Plaintiffs] suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the operation of the [law]; and (3) a favorable judgment is likely to redress the injury." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th. Cir. 2010). The crux of Plaintiffs' claims is that the Personhood Definition amends the Georgia Code in a manner that renders it "unclear whether and when clinicians could face criminal prosecution for providing abortions or even other medical treatment to pregnant patients." Pls.' Br. at 17; *see also* Compl. ¶ 68. Plaintiff medical providers offer comprehensive obstetrical and gynecological care and/or reproductive care including family planning, abortion, miscarriage

management, hormone therapy, and cancer screening and treatment. Compl. ¶¶ 12–21. Their patients and the members of Plaintiff SisterSong require access to such care. *Id.* ¶ 10. Plaintiffs and their members or patients are thus directly affected by the changed Code. Plaintiff providers are unsure if they would face prosecution for the medical care they regularly provide—including abortion care, miscarriage management, cancer treatment, and other care that can affect a pregnancy. Pls.' Br. at 17; Compl. ¶ 68.

It is thus confounding for Defendants to assert that Plaintiffs have failed to "identify any specific actions that *they* intend to take whose legal consequences are now made unclear or vague." Defs.' Br. at 18. Indeed, Plaintiffs are the very clinicians who would suffer from H.B. 481's vagueness—since the Act makes it impossible for them to do their work with "fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Enjoining enforcement of H.B. 481 would directly redress this harm.

### 2. Defendants concede that the Personhood Definition's impact is unclear.

As detailed in Plaintiffs' opening brief, the Personhood Definition amends numerous provisions of the Georgia Code in a manner that renders it unclear whether and when Plaintiff providers could face prosecution for the medical care they offer. Pls.' Br. at 15–18. *See Fox*, 567 U.S. at 253 (law unconstitutionally

8

vague where it fails to provide "fair notice of conduct that is forbidden"); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (law must provide "explicit standards" to avoid "arbitrary and discriminatory enforcement"). Defendants' brief only confirms that H.B. 481 has this broad impact, is subject to wide interpretation, and leaves Plaintiffs vulnerable to arbitrary enforcement.[7]

First, Defendants do not dispute that, under H.B. 481, every appearance of "person" or "human being" in the Georgia Code must be read to include in-utero embryos/fetuses at any stage of development. Defs.' Br. at 20; *see, e.g.*, O.C.G.A. § 16-5-60 (reckless conduct); § 16-5-70 (cruelty to children); § 16-5-21 (aggravated assault); § 16-12-171 (sale or distribution to, or possession by, minors of cigarettes and tobacco related objects); § 19-7-5 (mandatory reporting of child abuse by, *inter alia*, physicians, carrying criminal penalties).

Second, Defendants confirm that the various provisions of the Code, as amended by the Personhood Definition, could be read to permit prosecution for pre-viability abortions. For example, with respect to reckless conduct, Defendants offer only that "prosecut[ing] *pre-heartbeat* abortions [as reckless conduct] would

---

[7] Another Defendant also recognizes this vagueness. *See* Def. Sherry Boston's Resp. Opp'n Pls.' Mot. Prelim. Inj. at 4, ECF No. 71 (noting Act's "ambiguity").

*likely* be found unconstitutional"—but they do not dispute that the reckless conduct provision as amended appears to encompass such abortions. Defs.' Br. at 21 (emphases added).[8] Most important, Defendants are conspicuously silent on the question of whether the amended reckless conduct provision could be read to allow prosecution for *post*-cardiac-activity, pre-viability abortions or other medical care that can affect a pregnancy. They thus effectively concede that the Act is so vague that it can indeed be read to allow such prosecutions.[9]

Georgia cannot force Plaintiffs to act without fair notice or at risk of "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108. Accordingly, Plaintiffs are likely to succeed on the merits of their vagueness claim.

**C. This Court Should Enjoin H.B. 481 In Its Entirety.**

Defendants' severability argument is unavailing. Citing no authority, and without distinguishing the severability cases in Plaintiffs' brief, Defendants assert that this Court should sever "a number of the Act's provisions" that they claim

---

[8] Defendants make the same concession with respect to H.B. 481's impact on the provision for "aggravated assault." Defs.' Br. at 21.

[9] Defendants simply do not address a number of other specific code provisions that Plaintiffs have identified as examples of Georgia laws rendered vague by the Personhood Definition, including, for example, cruelty to children and mandatory reporting of child abuse. *See* Pls.' Br. at 16–17.

"have nothing to do with abortion." Defs.' Br. at 24 (citing Sections 5 (child support), 6 (tort recovery) & 12 (tax-exemption)). But as the Act's text makes plain, all its provisions are bound up in its main purpose, which is to ban abortion. Pls.' Br. at 14 n.16. That the Act's primary objective is to ban abortion is clear from the lack of implementing guidance in the very provisions Defendants seek to sever.[10] Indeed, Defendants concede that the purpose of Sections 3 and 4 is to ban abortion. *See, e.g.*, Defs.' Br. at 21. And that purpose is "inextricably woven into

---

[10] Defendants assert that "[t]he Act's primary objective is" not to ban abortion, but to "protect[] the life of the unborn," Defs.' Br. at 2, but that is not established by the Act's text. For example, the "detectable human heartbeat" language is defined identically in Sections 3 and 4, and appears in almost every substantive provision, *see* H.B. 481 §§ 3(e)(1), 4(a)(2), 5(a.1)(1), 6(c)(1), 7(1)(B), 8(3), 10(a), 11(a)(1), 12(a). Nonetheless, whereas Section 4 contains guidance on how to implement that language, *see* H.B. 481 §§ 4(b), 10(a) (physician must determine presence of detectable cardiac activity and cannot provide abortion if it exists), none of the other provisions Defendants cite do so, *compare id.* § 5 (no implementation or verification of "detectable human heartbeat" re child support), § 6 (same re tort recovery), § 12 (same re tax exemption). Indeed, it is a mystery how the Georgia Department of Revenue could limit tax exemptions to filers who carried an embryo/fetus with detectable cardiac activity during the tax year. These other provisions—Sections 5, 6, & 12 (child support, tort recovery, and tax exemptions)—clearly exist to support banning abortion and fall with the rest of the Act. In addition, the provisions that merely implement Section 4 also clearly fall with it: changes to the abortion reporting requirement (Section 11), counseling requirement (Sections 7 and 8), penalties for abortion providers (Section 9), and qualifications for abortion providers (Section 10). *See Ga. Ass'n of Educators v. Harris*, 749 F. Supp. 1110, 1118 (N.D. Ga. 1990).

11

the whole" of H.B. 481, *Harris*, 749 F. Supp. at 1118; *see also Daimler Chrysler Corp. v. Ferrante*, 637 S.E.2d 659, 662 (Ga. 2006).[11]

If severed, the sections Defendants claim "have nothing to do with abortion," Defs.' Br. at 24, would "fail[] to correspond to the main legislative purpose, or give effect to that purpose," *Daimler*, 637 S.E.2d at 662 (quoting *State v. Jackson*, 496 S.E.2d 912, 916 (Ga. 1998)); *see also Jackson*, 496 S.E.2d at 916–17; *Harris*, 749 F. Supp. at 1118. Because these other sections merely support, enforce, or have no operative effect without the provisions that ban abortion, they cannot be severed. *See Daimler*, 637 S.E.2d at 662; *Harris*, 749 F. Supp. at 1118. As a matter of Georgia law, the Act therefore must "fall in its entirety." *Jackson*, 496 S.E.2d at 917; *see also Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) ("Severability is . . . a matter of state law."). Given the interdependence of all the Act's provisions, it "can simply not be severed." *Harris*, 749 F. Supp. at 1118.

---

[11] Defendants' passing reference to the Act's severability clause, Defs.' Br. at 24, cannot circumvent the fact that the Act's unlawful purpose pervades every part of it. A severability clause creates a "presumption in favor of severability," but "does not allow this court to give the" law "an effect . . . altogether different from that which was enacted." *Lamar Co., L.L.C. v. City of Marietta*, 538 F. Supp. 29 1366, 1375 (N.D. Ga. 2008); *Daimler*, 637 S.E.2d at 662 ("severability clause . . . does not require a different result" where the unconstitutional provision was "the heart of the Act"); *Harris*, 749 F. Supp. at 1115 (finding law not severable despite severability clause).

## II. H.B. 481'S IRREPARABLE HARM AND THE OTHER PRELIMINARY INJUNCTON FACTORS WEIGH HEAVILY IN PLAINTIFFS' FAVOR.

Defendants do not contest Plaintiffs' *substantive* showing that a preliminary injunction is necessary to prevent irreparable harm that would occur if the Act took effect January 1, 2020, and that the balance of equities and public interest weigh heavily in their favor. *See* Pls.' Br. at 18–23. Nor could they: threats to constitutional privacy rights mandate a finding of irreparable harm. *Id*. at 18.

Defendants' sole response, a *procedural* one, is meritless and internally inconsistent. On the one hand, Defendants argue that Plaintiffs undermined their irreparable harm claim by filing too late. That argument is not credible: Plaintiffs filed expeditiously, seeking a preliminary injunction over five months before the Act's effective date.[12] Indeed, Defendants argue, on the other hand, that a preliminary injunction is "premature" because Plaintiffs filed too early—too far in

---

[12] Plaintiffs' timing "demonstrated the equitable, diligent, good-faith, vigilant conduct required of a litigant seeking equitable relief." *W. Ala. Women's Ctr. v. Williamson*, 120 F. Supp. 3d 1296, 1319 (M.D. Ala. 2015) (rejecting contention that plaintiff abortion providers should have sought preliminary injunction earlier).

advance of the effective date. Defs.' Br. at 22–24. Both claims fail, and Defendants are unable to cite authority supporting either one.[13]

Rather than dispute the substance of the remaining preliminary injunction factors, Defendants ask the Court (not in a motion, but instead buried in their opposition briefing) to consolidate this Motion with a final merits ruling under Fed. R. Civ. P. 65(a)(2), on an expedited basis. Defendants propose that the parties conduct written discovery, disclosure and depositions of fact and expert witnesses, and another round of briefing, all in time for the Court to hold a hearing and issue a final decision before the Act's January 1, 2020, effective date. Defs.' Br. at 22–24. The Court should reject Defendants' proposal as framed.

Plaintiffs agree that the case can be resolved expeditiously on the merits before January 1, 2020, but *only* based on the current record: Because Defendants do not (and cannot) dispute that the Act bans abortion at a pre-viability point in

---

[13] Defendants rely on three inapposite cases. Defs.' Br. at 21–24. *See Wreal, LLC v Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) (denying preliminary injunction where harm was ongoing and plaintiff delayed five months without explanation); *Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) (denying preliminary injunction where plaintiffs alleged no harm); *Allen v. School Bd. for Santa Rosa Cty.*, 782 F. Supp. 2d 1304 (N.D. Fla. 2011) (granting preliminary injunction to prevent prospective harm, but declining to preliminarily enjoin enforcement of ongoing consent decree, in order to maintain status quo).

pregnancy, *see supra* Part I, binding precedent condemns the Act, and this Court could enter final judgment for Plaintiffs at this time. This case is purely legal; no fact development or evidence could change the outcome here; and, therefore, no further discovery or evidence is warranted.

However, if this Court were to decide that discovery is appropriate (an issue that Plaintiffs dispute, and respectfully contend should be subject to separate briefing if the Court deems it an open issue), Plaintiffs would be entitled to have it proceed on a reasonable, orderly schedule—not the patently unreasonable, rushed schedule Defendants propose. *See* Defs.' Br. at 24. The purpose of a preliminary injunction is to prevent irreparable harm before the Court renders a decision on the merits. *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1366 (S.D. Ga. 2018) (irreparable harm factor weighed in favor of plaintiffs where rule would take effect on specific date and dispositive motions had not yet been briefed). Plaintiffs sought that relief on precisely the appropriate schedule, and are entitled to it: they have met all four factors for preliminary injunctive relief.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, this Court should grant Plaintiffs' Motion.

Respectfully submitted this 13th day of September, 2019.

| | |
|---|---|
| Susan Talcott Camp* <br> Elizabeth Watson* <br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC. <br> 125 Broad Street, 18th Floor <br> New York, NY 10004 <br> (212) 549-2633 <br> tcamp@aclu.org <br> ewatson@aclu.org <br><br> *Attorneys for Plaintiffs SisterSong, ACWC, AWMC, carafem, Summit, and Drs. Cwiak, Haddad and Lathrop* <br><br> Carrie Y. Flaxman* <br> PLANNED PARENTHOOD FEDERATION OF AMERICA <br> 1110 Vermont Avenue, NW <br> Suite 300 <br> Washington, DC 20005 <br> (202) 973-4800 <br> carrie.flaxman@ppfa.org <br><br> Susan Lambiase* <br> PLANNED PARENTHOOD FEDERATION OF AMERICA <br> 123 William St., Floor 9 <br> New York, NY 10038 <br> (212) 541-7800 (phone) <br> (212) 247-6811 (fax) <br> susan.lambiase@ppfa.org <br><br> *Attorneys for PPSE* | **Sean Young** <br> Attorney Bar Number: 790399 <br> Attorney for Plaintiffs <br> American Civil Liberties Union Foundation of Georgia, Inc. <br> P.O. Box 77208 <br> Atlanta, GA 30357 <br> Telephone: (678) 981-5295 <br> Email: syoung@acluga.org <br><br><br> Julie Rikelman* <br> Emily Nestler* <br> Kirby Tyrrell* <br> CENTER FOR REPRODUCTIVE RIGHTS <br> 199 Water Street, 22nd Floor <br> New York, NY 10038 <br> (917) 637-3670 (phone) <br> (917) 637-3666 (fax) <br> jrikelman@reprorights.org <br> enestler@reprorights.org <br> ktyrrell@reprorights.org <br><br> *Attorneys for Plaintiffs Feminist and CWHO* <br><br> * *Admitted pro hac vice* |

## CERTIFICATE OF COMPLIANCE

Pursuant to N.D. Ga. Local Civil Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with N.D. Ga. Local Civil Rule 5.1(C) in Times New Roman 14-point typeface.

**Sean Young**
Attorney Bar Number: 790399
Attorney for Plaintiffs
American Civil Liberties Union Foundation of Georgia, Inc.
P.O. Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: syoung@acluga.org

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which constitutes service on ECF registered users. N.D. Ga. Civil Local Rule 5.1(A)(3).

**Sean Young**
Attorney Bar Number: 790399
Attorney for Plaintiffs
American Civil Liberties Union Foundation of Georgia, Inc.
P.O. Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: syoung@acluga.org