# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SISTERSONG WOMEN OF COLOR REPRODUCTIVE JUSTICE COLLECTIVE, on behalf of itself and its members, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*, <br><br> *Defendants*. | No. 1:19-cv-02973-SCJ |

**STATE DEFENDANTS' OBJECTIONS AND RESPONSES
TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS,
INTERROGATORIES, AND REQUESTS FOR PRODUCTION**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Georgia, Atlanta Division, Defendants Brian Kemp, Christopher M. Carr, Kathleen Toomey, the Members of the Georgia Composite Medical Board, LaSharn Hughes, Julia Slater, Joyette M. Holmes, Danny Porter, and Meg Heap (all sued in their official capacities) ("the State Defendants") hereby respond to Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, served on Defendants on December 18, 2019.

**GENERAL OBJECTIONS**

Defendants make the following general objections to Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, and these objections apply to each discovery request regardless whether the general objections are expressly incorporated into

the specific objections below.

1.     Defendants object to each request to the extent it calls for information that is protected from discovery by the attorney-client privilege or the work product doctrine, or that are otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the relevant statutory or case law. Inadvertent production of such information or document(s) shall not be deemed a waiver of any privilege or immunity.

2.     Defendants object to Plaintiffs' definitions and instructions to the extent they seek to impose any requirements or obligations in addition to or different from those set forth in the Federal Rules of Civil Procedure, the Local Rules of this Court, any stipulation or agreement of the parties, or any order of this Court.

3.     Defendants object to each request to the extent that the request, or the definitions and instructions related to it, contain vague, ambiguous, or undefined terms.

4.     Defendants object to each request to the extent it requests that Defendants provide information, or produce or otherwise analyze documents or other information, that is not within the possession, custody, or control of Defendants, or to prepare any document or other information that does not already exist.

5.     Defendants object to each request to the extent it calls for production of confidential and/or proprietary information of Defendants prior to entry of a suitable protective order by the Court.

6.     Defendants object to each request to the extent it calls for confidential and/or proprietary information of any individual or entity other than Defendants.

7.     Defendants object to each request to the extent it calls for information or

documents that are in the public domain or already in the possession of Plaintiffs, and therefore of no greater burden for Plaintiffs than Defendants to obtain.

8. Defendants object to each request to the extent that it seeks information that can be obtained from some another source that is more convenient, less burdensome, or less expensive, or that is unreasonably cumulative or duplicative.

9. Defendants object to each request as overbroad, unduly burdensome, and calling for information that is neither relevant to any issue in this action, proportional to the needs of the case, nor reasonably calculated to lead to the discovery of admissible evidence.

10. Defendants object to each request to the extent that responding to it would cause annoyance, harassment, and/or undue burden, delay, or expense.

11. Defendants object to each request to the extent it calls for legal conclusions, presents questions of pure law, calls for expert opinion, or exceeds the permissible number of requests, including subparts.

12. Defendants object to each request as premature, overbroad, unduly burdensome, and improper to the extent it seeks identification of "all" facts, documents, persons, evidence, or bases, or purports to require Defendants to marshal and identify all evidence concerning any issue in dispute.

13. Defendants object to Plaintiffs' discovery requests to the extent they ask for information or documents from prior to January 1, 2019, as those documents are irrelevant to Defendants' claims and Plaintiffs' defenses.

14. Defendants object to Plaintiffs' requests for electronically stored information to the extent the requests ask Defendants to review every piece of electronic data in Defendants' possession for responsiveness. Production of electronically storied information, if any, will be based upon

reasonable negotiated search terms and date ranges.

15.     Defendants' objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Defendants' right to amend or supplement their objections and responses after considering information obtained or reviewed through further discovery.

## SPECIFIC OBJECTIONS AND RESPONSES
## TO REQUESTS FOR ADMISSION

**Request for Admission No. 1:**

Over 85% of abortions in Georgia take place at or after 6.0 weeks LMP.

**Response to Request for Admission No. 1:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 2:**

Some medical conditions make it more difficult for a woman to know she is pregnant.

**Response to Request for Admission No. 2:**

Plaintiffs withdrew this RFA by correspondence dated January 16, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 3:**

Embryonic cardiac activity, if present, is detectable with vaginal ultrasound by 6.0 weeks LMP.

**Response to Request for Admission No. 3:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 4:**

Some necessary medical treatments for a pregnant person can harm an embryo/fetus.

**Response to Request for Admission No. 4:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 5:**

Some antibiotics such as tetracycline, administered to a pregnant person, can harm an embryo/fetus.

**Response to Request for Admission No. 5:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 6:**

Testosterone therapy, administered to a pregnant person, can harm an embryo/fetus.

**Response to Request for Admission No. 6:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 7:**

The measles, mumps, rubella vaccine, administered to a pregnant person, can harm an embryo/fetus.

**Response to Request for Admission No. 7:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 8:**

Surgeries such as appendectomy for a pregnant person can harm an embryo/fetus.

**Response to Request for Admission No. 8:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 9:**

Some cancer treatments, administered to a pregnant person, can harm an embryo/fetus.

**Response to Request for Admission No. 9:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 10:**

Some transgender health care, administered to a pregnant person, can harm an embryo/fetus.

**Response to Request for Admission No. 10:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 11:**

No pregnancy test can rule out pregnancy in the earliest days of pregnancy.

**Response to Request for Admission No. 11:**

Plaintiffs withdrew this RFA by correspondence dated January 16, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 12:**

The presence of detectable cardiac activity does not mean that an embryo/fetus has—at the moment that cardiac activity is detected—a reasonable likelihood of sustained survival outside uterus with or without artificial aid, in light of current medical technology.

**Response to Request for Admission No. 12:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 13:**

In light of current medical technology, no embryo has a reasonable likelihood of sustained survival outside the uterus with or without artificial aid at or before 6.0 weeks LMP.

**Response to Request for Admission No. 13:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 14:**

In light of current medical technology, no fetus has a reasonable likelihood of sustained survival outside the uterus with or without artificial aid at or before 12.0 weeks LMP.

**Response to Request for Admission No. 14:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

**Request for Admission No. 15:**

In light of current medical technology, no fetus has a reasonable likelihood of sustained survival outside the uterus with or without artificial aid at or before 18.0 weeks LMP.

**Response to Request for Admission No. 15:**

Plaintiffs withdrew this RFA by correspondence dated January 15, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**

If you deny Request for Admission #3, state each and every factual basis for your denial of Request for Admission #3.

**Response to Interrogatory No. 1:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 2:**

What is the earliest point in pregnancy at which embryonic cardiac activity is detectable with vaginal ultrasound?  Answer in this format: ___.___ weeks LMP.

**Response to Interrogatory No. 2:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 3:**

If you deny Request for Admission #13, #14, or #15, state each and every factual basis for your denial of Request for Admission #13, #14, or #15.

**Response to Interrogatory No. 3:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 4:**

How many induced abortions occurred in Georgia in 2018 at each week of pregnancy through 21.6 weeks LMP? Answer in this format:

| Week | No. of Induced Abortions in GA in 2018 |
|---|---|
| 0.0-0.6 weeks LMP | |
| 1.0-1.6 weeks LMP | |
| 2.0-2.6 weeks LMP | |
| 3.0-3.6 weeks LMP | |
| 4.0-4.6 weeks LMP | |
| 5.0-5.6 weeks LMP | |
| 6.0-6.6 weeks LMP | |
| 7.0-7.6 weeks LMP | |
| 8.0-8.6 weeks LMP | |
| 9.0-9.6 weeks LMP | |
| 10.0-10.6 weeks LMP | |
| 11.0-11.6 weeks LMP | |
| 12.0-12.6 weeks LMP | |
| 13.0-13.6 weeks LMP | |
| 14.0-14.6 weeks LMP | |
| 15.0-15.6 weeks LMP | |
| 16.0-16.6 weeks LMP | |
| 17.0-17.6 weeks LMP | |

18.0-18.6 weeks LMP
19.0-19.6 weeks LMP
20.0-20.6 weeks LMP
21.0-21.6 weeks LMP

**Response to Interrogatory No. 4:**

Defendants object to this Interrogatory on the grounds that ITOP data is not collected in the form which the question requests this data. Specifically, ITOP data is based on completed weeks of gestation, using the obstetric estimate methodology rather than LMP. Defendants further object to the extent this request requires Georgia Department of Health to include individual numbers under 25, as policy prohibits Georgia officials from producing data for populations so small that they cannot be considered de-identified.

Subject to and without waiving their objections, Defendants respond as follows: According to data available to the Georgia Department of Health. the number of induced terminations of pregnancy that occurred in Georgia in 2018, by competed weeks of gestation, are as follows:,

| WEEKS OF GESTATION | FREQUENCY |
|---:|---:|
| 0 | less than 25 |
| 1 | less than 25 |
| 2 | less than 25 |
| 3 | 131 |
| 4 | 633 |
| 5 | 3,810 |
| 6 | 8,760 |
| 7 | 6,139 |
| 8 | 4,032 |
| 9 | 2,633 |
| 10 | 1,641 |
| 11 | 1,438 |
| 12 | 1,096 |
| 13 | 717 |
| 14 | 546 |

| | | |
|---|---|---|
| | 15 | 463 |
| | 16 | 489 |
| | 17 | 286 |
| | 18 | 289 |
| | 19 | 263 |
| | 20 | 275 |
| | 21 | 255 |

**Interrogatory No. 5:**

What is the impact of H.B. 481 §3 on abortion?

**Response to Interrogatory No. 5:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 6:**

What is the impact of H.B. 481 §3 on miscarriage management?

**Response to Interrogatory No. 6:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 7:**

What is the impact of H.B. 481 §3 on medical care—other than abortion or miscarriage—that may harm an embryo or fetus?

**Response to Interrogatory No. 7:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 8:**

What is the earliest point in pregnancy at which H.B. 481 § 3 has any impact on abortion? Answer in this format: ___.___ weeks LMP.

**Response to Interrogatory No. 8:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 15, 2020. Defendants preserve all objections to this Interrogatory should Plaintiffs renew it.

**Interrogatory No. 9:**

State all facts that support your assertion that under H.B. 481, "all women are capable of obtaining an abortion before detection of the heartbeat." *See* Joint Preliminary Report and Discovery Plan at 7, ECF 90.

**Response to Interrogatory No. 9:**

Plaintiffs withdrew this Interrogatory by correspondence dated January 16, 2020. Defendants preserve all objections to this RFA should Plaintiffs renew it.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

**Document Request No. 1:**

Produce all ITOP (Induced Termination of Pregnancy) Reports for 2018

**Response to Document Request No. 1:**

Defendants object to this Request on the grounds that it is unnecessary, unduly burdensome, and disproportionate to the needs of the case. Defendants further object that the production of this information would violate state laws and rules governing the confidentiality of ITOP and medical records, and the cost of redacting or otherwise avoiding disclosure of protected information is disproportionate to the needs of the case. Defendants further object that the reports are unnecessary in light of the parties' stipulations and the response to Interrogatory No. 4.

**Document Request No. 2:**

Produce all documents you referred to in answering Interrogatory # 4.

11

**Response to Document Request No. 2:**

Defendants object to the extent this calls for privileged information. Defendants object to this Request on the grounds that it is unnecessary, unduly burdensome, and disproportionate to the needs of the case. Defendants further object that the production of this information would violate state laws and rules governing the confidentiality of medical records, and the cost of redacting or otherwise avoiding disclosure of protected information is disproportionate to the needs of the case. Defendants further object that the reports are unnecessary in light of the parties' stipulations and the response to Interrogatory No. 4.

**Document Request No. 3:**

> Produce all guidance documents and documents concerning the enforcement or planned enforcement, implementation, or application of H.B. 481, including but not limited to protocols and policy statements related to H.B. 481.

**Response to Document Request No. 3:**

Defendants object to this request to the extent it seeks information that is privileged—including, but not limited to, the attorney-client, work product, and executive privileges. Defendants also object to the extent that it seeks "all documents" concerning H.B. 481, regardless of source, significance, or location, as the request is unduly burdensome and disproportionate to the needs of the case. Defendants further object to the extent this request calls for production of public documents, statements, and press releases that are as equally available to the Plaintiffs as Defendants.

Subject to and without waiving its general and specific objections, Defendants have searched for and can state that there are no final non-privileged guidance documents, protocols, or policy statements prepared by any agency charged with administering provisions of H.B 481.

**Document Request No. 4:**

Produce all documents referred to, identified in response to, or used in the preparation of

your responses to Plaintiffs' Interrogatories and Requests for Admission, to the extent they are not already covered by an existing request.

**Response to Document Request No. 4:**

Defendants object to the extent this calls for privileged information. Defendants object to this Request on the grounds that it is duplicative, unnecessary, unduly burdensome, and disproportionate to the needs of the case. Defendants further object that the production of this information would violate state laws and rules governing the confidentiality of medical records, and the cost of redacting or otherwise avoiding disclosure of protected information is disproportionate to the needs of the case. Defendants further object that the reports are unnecessary in light of the parties' stipulations and the responses to Plaintiffs' other discovery requests.

**Document Request No. 5:**

Produce all documents upon which you intend to rely in response to any allegation, claim, or defense asserted by any party to this litigation, including but not limited to any documents that you expect to use as exhibits at any hearing, proceeding, deposition, or trial in this litigation.

**Response to Document Request No. 5:**

Defendants object to the extent this requires Defendants to identify "all documents" they might use at future hearings, before the relevant deadlines set by the Rules of Civil Procedure or orders from the Court. Subject to and without waiving its general and specific objections, Defendants will produce any documents responsive to this request that they reasonably believe they may use in response to any allegation, claim, or defense asserted by any party to this litigation (to the extent it has not already been produced).

|  |  |
|---|---|
| Dated: January 17, 2020 | As to objections,<br><br>/s/ *Jeffrey M. Harris* |

Jeffrey M. Harris (*pro hac vice*)
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South, PMB #706
Boston, MA 02109
(617) 227-0548

Christopher M. Carr
   *Attorney General of Georgia*
Andrew A. Pinson (Bar #584719)
   *Solicitor General*
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
(404) 651-9453

As to Answers to Admissions, Interrogatories, and Requests for Production:

I, Andrew A. Pinson, declare under penalty of perjury under the laws of the United States of America that the statements made in the foregoing State Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Admissions, Interrogatories, and Requests for Production related to me are true to the best of my knowledge, information, and belief.

/s/ *Andrew A. Pinson*

Andrew A. Pinson