# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

SISTERSONG WOMEN OF COLOR
REPRODUCTIVE JUSTICE
COLLECTIVE, on behalf of itself and
its members, *et al.*,

                    *Plaintiffs*,

      v.

BRIAN KEMP, Governor of the State
of Georgia, in his official capacity, *et
al.*,

                   *Defendants*.

No. 1:19-cv-02973-SCJ

**ORAL HEARING REQUESTED**

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

Christopher M. Carr
  *Attorney General of Georgia*
Andrew A. Pinson (Bar #584719)
  *Solicitor General*
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
(404) 651-9453

Jeffrey M. Harris (*pro hac vice*)
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South, PMB #706
Boston, MA 02109
(617) 227-0548

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

BACKGROUND .................................................................................. 3

  I.  Overview of the LIFE Act ........................................................... 3

  II.  Plaintiffs' Complaint and Preliminary Injunction Motion ..................... 6

  III.  Plaintiffs' Motion to Severely Limit Expert Discovery ............................ 7

ARGUMENT .................................................................................. 9

  I.  Defendants Are Entitled To Summary Judgment On All Claims Because Plaintiffs Have Failed To Establish Standing. ......................... 9

    A.  Plaintiff SisterSong lacks organizational standing. ............................ 9

      1.  SisterSong has not identified any members with standing to sue in their own right. .................................................... 10

      2.  SisterSong has failed to establish organizational standing under a diversion-of-resources theory. ............................. 11

    B.  The Provider Plaintiffs lack third-party standing. ............................ 13

  II.  Defendants Are Entitled To Summary Judgment on Plaintiffs' Void-for-Vagueness Claim. ....................................................... 16

  III.  Defendants Are Entitled To Partial Summary Judgment On The Ground That All Provisions Of The Act Not Specifically Found Unconstitutional Are Severable. ............................................. 22

CONCLUSION ................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*Alabama Educ. Ass'n v. State Superintendent of Educ.,*
746 F.3d 1135 (11th Cir. 2014) .................................................................18

*Azar v. Garza,*
138 S. Ct. 1790 (2018)..............................................................................14

*City of Lakewood v. Plain Dealer Pub. Co.,*
486 U.S. 750 (1988)..................................................................................23

*Crossen v. Breckenridge,*
446 F.2d 833 (6th Cir. 1971) ....................................................................11

*Democratic Party of Georgia, Inc. v. Crittenden,*
347 F. Supp. 3d 1324 (N.D. Ga. 2018) ....................................................10

*Doe v. Bolton,*
410 U.S. 179 (1973)..................................................................................14

*Edwards v. Beck,*
8 F. Supp. 3d 1091 (E.D. Ark. 2014) .......................................................25

*Elend v. Basham,*
471 F.3d 1199 (11th Cir. 2006) ..........................................................21, 22

*Elk Grove Unified Sch. Dist. v. Newdow,*
542 U.S. 1 (2004)......................................................................................15

*Falls Church Med. Ctr., LLC v. Oliver,*
412 F. Supp. 3d 668 (E.D. Va. 2019).......................................................25

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012)..................................................................................16

*Fla. Businessmen for Free Enter. v. City of Hollywood,*
673 F.2d 1213 (11th Cir. 1982) ................................................................21

*Gentile v. State Bar of Nevada,*
501 U.S. 1030 (1991)................................................................................16

*Harris v. McRae,*
448 U.S. 297 (1980)..................................................................................20

*Harris v. Mexican Specialty Foods, Inc.,*
564 F.3d 1301 (11th Cir. 2009) ................................................................16

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..................................................................13

*High Ol' Times, Inc. v. Busbee*,
    673 F.2d 1225 (11th Cir. 1982) ...........................................17, 21

*Hill v. Colorado*,
    530 U.S. 703 (2000)..................................................................18

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)......................................................................18

*Indigo Room, Inc. v. City of Fort Myers*,
    710 F.3d 1294 (11th Cir. 2013) ......................................17, 18, 19

*Kennedy v. Avondale Estates, Ga.*,
    414 F. Supp. 2d 1184 (N.D. Ga. 2005) ....................................23

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004).............................................................1, 14

*Lake Carriers' Ass'n v. MacMullan*,
    406 U.S. 498 (1972)..................................................................20

*Lamar Advert. Co. v. City of Douglasville, Ga.*,
    254 F. Supp. 2d 1321 (N.D. Ga. 2003) ....................................23

*Leavitt v. Jane L.*,
    518 U.S. 137 (1996)..................................................................24

*Libertarian Party of Ohio v. Husted*,
    751 F.3d 403 (6th Cir. 2014) ...................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................9, 11

*McCormack v. Hiedeman*,
    2012 WL 256026 (D. Idaho 2012).............................................11

*M McInnes-Misenor v. Maine Med. Ctr.*,
    211 F. Supp. 2d 256 (D. Me. 2002)...........................................11

*McInnis-Misenor v. Maine Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) .......................................................11

*Nat. Res. Def. Council, Inc. v. Wheeler*,
    367 F. Supp. 3d 219 (S.D.N.Y. 2019) ......................................13

*Nat'l Taxpayers Union v. United States,*
  68 F.3d 1428 (D.C. Cir. 1995)........................................................13

*Performing Abortion Servs. v. Lakey,*
  667 F.3d 570 (5th Cir. 2012) ..................................................18, 21

*Planned Parenthood of Se. Pa. v. Casey,*
  505 U.S. 833 (1992)........................................................................24

*Reprod. Health Servs. v. Marshall,*
  268 F. Supp. 3d 1261 (M.D. Ala. 2017)........................................25

*Roe v. Wade,*
  410 U.S. 113 (1973)........................................................................10

*Roma Outdoor Creations, Inc. v. City of Cumming, Ga.,*
  2009 WL 10700286 (N.D. Ga. 2009) ...........................................23

*Seok Hwi Cha v. YP's Kani, Inc.,*
  317 F. Supp. 3d 1215 (N.D. Ga. 2018) ...........................................9

*Spokeo Inc. v. Robins,*
  136 S. Ct. 1540 (2016).......................................................................9

*State v. Boyer,*
  270 Ga. 701 (1999) ..................................................................19, 20

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009)..................................................................11, 12

*Trustees of Indiana Univ. v. Curry,*
  918 F.3d 537 (7th Cir. 2019) ........................................................17

*Union City Bd. of Zoning Appeals v. J. Outdoor Displays, Inc.,*
  266 Ga. 393 (1996) ........................................................................23

*United States v. Marino-Garcia,*
  679 F.2d 1373 (11th Cir. 1982) ....................................................16

*United States v. Ruggiero,*
  791 F.3d 1281 (11th Cir. 2015) ..............................................16, 17

*United States v. Salerno,*
  481 U.S. 739 (1987)........................................................................17

*Women's Emergency Network v. Bush,*
  323 F.3d 937 (11th Cir. 2003) ......................................................12

**Statutes**

O.C.G.A. §1-1-3..................................................................................5, 6

O.C.G.A. §16-5-60...............................................................................19

**Rules**

Fed. R. Civ. P. 56...................................................................................9

# INTRODUCTION

Defendants Brian Kemp, Christopher M. Carr, Kathleen Toomey, the Members of the Georgia Composite Medical Board, LaSharn Hughes, Julia Slater, Joyette M. Holmes, Daniel Porter, and Meg Heap (all sued in their official capacities) (collectively "Defendants") are entitled to summary judgment or partial summary judgment for multiple independent reasons.

*First*, Defendants are entitled to summary judgment on all claims on the ground that Plaintiffs have failed to establish standing to bring this suit. Plaintiff SisterSong Women of Color Reproductive Justice Collective lacks associational standing because it has not identified a single one of its members who would have standing in her own right (*i.e.*, a pregnant woman seeking an abortion who claims she would be affected by the LIFE Act). Nor can SisterSong—which is not even regulated by the Act—assert standing based on its voluntary decisions about how to spend its resources. The other Plaintiffs—physicians and abortion providers—have also failed to establish third-party standing to bring this suit on behalf of their patients. Under *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004), a plaintiff alleging third-party standing must establish both a close relationship with the third party and a hindrance to that party's assertion of her own rights. Plaintiffs here have not proven either element, and have offered nothing more than boilerplate and conclusory allegations in support of their third-party standing.

*Second*, even if Plaintiffs have standing, their void-for-vagueness claim fails as a matter of law. Plaintiffs are bringing a *facial* vagueness challenge

to the Act's definition of "natural person," and courts have repeatedly emphasized the high bar that such claims must satisfy. Plaintiffs speculate about potentially vague applications of the Act's definitions, but that reasoning gets things backwards. In a facial vagueness challenge, a statute must be upheld if it has any *valid* applications—not struck down if the Plaintiffs can identify one scenario in which it is potentially vague or unclear. To the extent Plaintiffs are concerned that specific *applications* of the definitions might be vague, the proper vehicle is an as-applied challenge directed at those applications, not a facial challenge directed at the entire Act. In all events, the Act's definition of "natural person" is clear on its face and unquestionably has valid applications. And Plaintiffs' argument that this definition might make other statutes (such as the prohibition on reckless conduct) vague or unclear disregards the Georgia courts' authoritative interpretations of those statutes.

*Third*, even if this Court were to find in favor of Plaintiffs on one or both of their claims, Sections 3(b) and 4 can easily be severed from the rest of the Act. Georgia law always favors severability and the Act contains an express severability clause. Regardless of the validity of the Act's limitations on abortion, Plaintiffs have failed to demonstrate that the Court should enjoin a number of provisions (never challenged here) that relate to child support, tax benefits, population determinations, and other matters unrelated to abortion. The Court should enter judgment for Defendants on all provisions of the Act not specifically found unconstitutional.

## BACKGROUND

### I.    Overview of the LIFE Act

The LIFE Act is a comprehensive measure to protect the life of the unborn and promote the wellbeing of unborn children and their parents. The Act seeks to advance those goals through multiple distinct provisions. Section 4 prohibits "using, prescribing, or administering any instrument, substance, device, or other means with the purpose to terminate a pregnancy with knowledge that termination will, with reasonable likelihood, cause the death of an unborn child" who possesses a "detectable human heartbeat." Act §4(a)(1), (b). The Act defines an "unborn child" as "a member of the species Homo sapiens at any stage of development who is carried in the womb." *Id.* §3(e)(2). It further defines a "detectable human heartbeat" as "embryonic or fetal cardiac activity or the steady and repetitive rhythmic contraction of the heart within the gestational sac." *Id.* §3(e)(1). The Act clarifies that a procedure will not be deemed an abortion if it is performed with the purpose of "[r]emoving a dead unborn child caused by spontaneous abortion" (*i.e.*, miscarriage) or "[r]emoving an ectopic pregnancy." *Id.* §4(a)(1).

Section 4's limitation on post-heartbeat abortions has multiple exceptions. A post-heartbeat abortion is allowed if the mother has a "medical emergency," which is defined as a situation in which "[a] physician determines, in reasonable medical judgment," that "an abortion is necessary in order to prevent the death of the pregnant woman or the substantial and irreversible physical impairment of a major bodily function of the pregnant

woman." Act §4(a)(3), (b)(1). It is also allowed if the "probable gestational age of the unborn child is 20 weeks or less and the pregnancy is the result of rape or incest in which an official police report has been filed alleging the offense of rape or incest." *Id.* §4(b)(2). A post-heartbeat abortion is also permitted in a "medically futile" pregnancy, *i.e.*, when "in reasonable medical judgment, an unborn child has a profound and irremediable congenital or chromosomal anomaly that is incompatible with sustaining life after birth." *Id.* §4(a)(4), (b)(3).[1] Finally, the Act creates affirmative defenses to prosecution for any physician, nurse, pharmacist, or physician assistant who "provides medical treatment to a pregnant woman which results in the accidental or unintentional injury to or death of an unborn child." *Id.* §4(h).

Although Section 4 is the overwhelming focus of Plaintiffs' complaint, the Act does far more than regulate abortion. Section 2 makes important findings: that all human beings are created equal and endowed with unalienable rights; that the Georgia and U.S. Constitutions protect the fundamental rights of all persons; and that modern medical science has shown that "unborn children are a class of living, distinct persons." Act §2. Consistent with the Act's stated "policy … to recognize unborn children as natural persons," Section 3(b) defines "natural person" to include "any human being including an unborn child." *Id.* §§2(6), 3(b).

---

[1] Section 11 requires, in the case of a post-heartbeat abortion, that the physician report to the Department of Health the basis for concluding that one of the exceptions applies. *See id.* §11.

The Act also contains several other provisions that promote the wellbeing of unborn children and their parents. The Act provides that any natural person, including an unborn child with a detectable heartbeat, shall be included in population-based determinations. *Id.* §(3)(d). To promote maternal wellbeing during pregnancy, the Act amends Georgia's alimony and child-support statutes to define "child" as including "any unborn child with a detectable human heartbeat." *Id.* §5. This provision ensures that absent fathers will contribute to the "direct medical and pregnancy related expenses of the mother of the unborn child." *Id.* Relatedly, the Act provides tax benefits for expectant parents by allowing them to claim an unborn child with a detectable heartbeat as a dependent for purposes of state income taxes. *Id.* §12. And the Act provides an enhanced tort recovery for parents whose unborn children with a detectable heartbeat suffer fetal homicide. *Id.* §6.

Sections 7 and 8 of the Act further update Georgia's informed-consent and informational requirements. Section 7 requires physicians to inform a pregnant woman about the presence of a detectable human heartbeat before performing an abortion. *Id.* §7. And Section 8 requires the Department of Health to give the public "objective, nonjudgmental, and … accurate scientific information" about the unborn. *Id.* §8.

Finally, Section 14 of the Act contains a broad severability clause, providing that "[a]ll provisions of this Act shall be severable in accordance with Code Section 1-1-3." Act §14. According to O.C.G.A. §1-1-3, all valid provisions of the Act are to "remain of full force and effect as if such portion

5

so declared or adjudged invalid or unconstitutional were not originally a part of" the Act. O.C.G.A. §1-1-3.

## II.   Plaintiffs' Complaint and Preliminary Injunction Motion

On June 28, 2019, Plaintiffs filed a complaint seeking to enjoin the entire Act. Compl., ECF No. 1. None of the Plaintiffs are individual women who claim a burden on their right to an abortion. Instead, Plaintiffs consist of an advocacy organization and a group of abortion providers and physicians.

The complaint includes two claims for relief. First, Plaintiffs allege that the Act's restrictions on abortion "violate[] Georgians' right to privacy and liberty secured by the Fourteenth Amendment to the United States Constitution." *Id.* ¶73. Second, Plaintiffs allege that Section 3(b)'s new definition of "natural person" is unconstitutionally vague under the Due Process Clause. *Id.* ¶¶76-79. Plaintiffs allege that the term "person" appears in the Georgia code "hundreds of times" and that the Act "do[es] not provide adequate guidance as to how they can comply with the law." *Id.* ¶¶76-77. Although Plaintiffs directly challenge only the restrictions on abortion and the definition of "natural person"—and allege no injuries resulting from any other provisions of the Act—they nonetheless ask that the Court permanently enjoin Defendants from enforcing the *entire* Act.

Plaintiffs subsequently moved for a preliminary injunction, and this Court granted that motion on October 1, 2019. *See* Order, ECF No. 97. The Court found that Plaintiffs were likely to succeed on their substantive due process claim because "under no circumstances whatsoever may a State

prohibit or ban abortions at any point prior to viability, no matter what interests the State asserts to support it." *Id.* at 33. The Court further held that Plaintiffs were likely to succeed on their vagueness claim in light of "unanswered questions" about how the Act's definitions would apply to other statutes and a risk of "arbitrary or discriminatory enforcement." *Id.* at 38-40. Finally, the Court held that no other provisions of the Act were severable from those that Plaintiffs challenged because even the provisions that have nothing to do with abortion incorporated some of the definitions from Section 3 of the Act. *Id.* at 44-45.

## III.   Plaintiffs' Motion to Severely Limit Expert Discovery

Recognizing that "discovery is appropriate," the Court put this case on a four-month discovery track. *Id.* at 46. During the discovery period, Defendants engaged two prominent experts to offer testimony in support of the State's defense of the Act.[2]  Plaintiffs nonetheless sought to bar the State

---

[2] Dr. Farr Curlin, a professor at Duke University School of Medicine and expert in bioethics, would have testified that the Act's limitations on elective abortion were consistent with principles of bioethics; that the heartbeat is a reasonable point at which to limit elective abortion; that the Act would protect women from the health and safety risks of later-term abortions; and that the Act would help preserve the integrity of the medical profession. *See* Curlin Report, ECF No. 113-1. Defendants also proffered testimony from Dr. Ingrid Skop, a practicing obstetrician-gynecologist with more than 20 years of experience. Dr. Skop would have testified about, *inter alia*, the feasibility of detecting pregnancy and obtaining elective abortions within the limits imposed by the Act; the health and safety risks of later-term abortions; women's ability to control their reproductive choices through birth control and/or emergency contraception; and the efficacy of the statutory exceptions in the Act. *See* Skop Report, ECF No. 113-2.

from relying on any of this expert testimony. On October 29, 2019, more than two months into the four-month discovery period, Plaintiffs filed a motion to preclude any expert testimony on "the state's interests in banning abortion prior to viability, along with the strength of those interests and the extent to which H.B. 481 is closely tied to serving those interests." Motion at 1, ECF No. 104. Defendants opposed that motion, arguing that, under Rule 26's liberal discovery standard, the State should be permitted to develop a comprehensive factual and expert record in defense of the Act.

On December 4, 2019, this Court granted Plaintiffs' motion to severely limit discovery. *See* Order, ECF No. 115. The Court concluded that "[t]he Supreme Court has repeatedly and unequivocally held that under no circumstances whatsoever may a state prohibit or ban abortions prior to viability, no matter what interests the state asserts to support it." *Id.* at 2-3. The Court thus held that "discovery, including expert discovery, regarding the state's interests underlying H.B. 481 should be precluded." *Id.* at 5.

Even after Plaintiffs succeeded in excluding Defendants' expert testimony, Plaintiffs insisted on propounding *their own* expert testimony. After weeks of negotiations, Plaintiffs agreed to withdraw their proffered expert testimony in exchange for a series of stipulations. Defendants entered into those stipulations (which are being filed concurrently) only in light of the Court's order excluding their affirmative expert testimony. Defendants continue to object to the exclusion of their expert testimony and reserve all rights to seek further review of the Court's discovery order.

## ARGUMENT

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute if the moving party shows either (1) "an absence of evidence in the record to support an essential element of the non-moving party's case," or (2) "evidence … that the non-moving party cannot prove its case." *Seok Hwi Cha v. YP's Kani, Inc.*, 317 F. Supp. 3d 1215, 1216 (N.D. Ga. 2018). The burden then shifts to the non-moving party to "com[e] forward with specific facts to show a genuine dispute." *Id.*

## I. Defendants Are Entitled To Summary Judgment On All Claims Because Plaintiffs Have Failed To Establish Standing.

The plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing" its standing to bring suit. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Now that this case is at summary judgment, Plaintiffs "can no longer rest on … mere allegations," but "must set forth by affidavit or other evidence specific facts" showing standing. *Lujan*, 504 U.S. at 561 (cleaned up).

### A. Plaintiff SisterSong lacks organizational standing.

Plaintiff SisterSong does not, and cannot, contend that it has any constitutional rights *of its own* that are allegedly infringed by the LIFE Act. Instead, it seeks to bring this suit on behalf of its members to vindicate *their* alleged constitutional rights. *See* Compl. ¶¶11, 70, ECF No. 1.

An organization may demonstrate standing in this posture in one of two ways. *See Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp.

9

3d 1324, 1336 (N.D. Ga. 2018). First, it can show that "its members would otherwise have standing to sue in their own right ...." *Id.* (cleaned up). Second, it can show that the "defendant's illegal acts impair[ed] the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Id*. SisterSong has demonstrated neither.

### 1. SisterSong has not identified any members with standing to sue in their own right.

First, the members that Plaintiffs invoke as the basis for SisterSong's standing do not have standing to sue in their own right. Defendants' discovery requests asked SisterSong to identify any individual members SisterSong intended to rely upon to establish the association's standing, plus the ground on which those individuals could bring suit in their own right. In response, Plaintiffs offered two anonymous members plus a single sentence regarding standing: "The SisterSong members below have child-bearing capacity and would therefore suffer the injuries outlined in the Complaint under H.B. 481." Defts' Statement of Material Facts (SMF) ¶2.

Under settled law, merely being of childbearing age is insufficient to confer standing to challenge a regulation of abortion procedures. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 128 (1973) ("[P]ossible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health ... [are not] sufficient to present an actual case or controversy."). For such women, the harm of being "denied an abortion" is "hypothetical," not concrete. *Crossen v. Breckenridge*, 446 F.2d

833, 839 (6th Cir. 1971); *see also McCormack v. Hiedeman*, 2012 WL 256026, at *3 (D. Idaho 2012) ("[T]he overwhelming majority of courts to consider this issue—and most importantly the Supreme Court—have viewed nonpregnancy as fatal to standing."); *McInnes-Misenor v. Maine Med. Ctr.*, 211 F. Supp. 2d 256, 260-61 (D. Me. 2002) (collecting cases), *aff'd McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003). SisterSong has thus failed to demonstrate that the two members it invokes as the basis for its associational standing would have standing to sue in their own right.

### 2. *SisterSong has failed to establish organizational standing under a diversion-of-resources theory.*

Alternatively, SisterSong alleges that the Act "would force [it] to divert its scarce time and resources away from many other aspects of [its] work to focus on helping Georgians access abortion care out of state and otherwise adjust to [the Act's] sweeping impact." Compl. ¶11, ECF No. 1. At most, however, those allegations merely reflect SisterSong's *voluntary choices* about how to spend its resources rather than anything compelled or required by the Act. *See Lujan*, 504 U.S. at 590 (plaintiff's injury-in-fact must be "fairly traceable to the defendant's allegedly unlawful conduct" (citation omitted)).

"[S]tanding depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing … is ordinarily substantially more difficult to establish." *Id.* (citation omitted); *see, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-94 (2009) (organization lacked standing to challenge regulations that "neither require nor forbid any action on the[ir] part");

*Women's Emergency Network v. Bush*, 323 F.3d 937, 948 (11th Cir. 2003) (organization "ineligible" for grant program lacked standing to challenge it).

Article III's requirements "would be eviscerated if an advisor or organization can be deemed to have Article III standing merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to change the law." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459-61 (6th Cir. 2014). The "Article III standing limitation prevents a plaintiff from bringing a federal suit to resolve an issue of public policy if success does not give the plaintiff … some relief other than the satisfaction of making the government comply with the law." *Id.*

When asked by Defendants to "describe in detail" what resources the Act "caused" SisterSong to divert, Plaintiffs offered only vague responses. They assert that "SisterSong's Georgia Coordinator has diverted about 60% of her time, and SisterSong's Executive Director has diverted about 40% of her time, in response to H.B. 481," Defts' SMF ¶3, but provide no specifics about what those "responses" entailed. They further assert that "SisterSong had to spend approximately $20,000 in 2019 to hire a public relations firm to handle the increased volume of media inquiries about H.B. 481," *id.*, but obviously nothing in the Act compelled SisterSong to talk to the press. And Plaintiffs claim that SisterSong diverted resources from "trainings" to "educate members and the public about H.B. 481's new restrictions and what they can do about it." *Id.* But they fail to explain how these "educat[ion]" efforts differed from the group's regular "trainings."

At bottom, SisterSong's "harm" appears to be nothing more than its voluntary decision to inform its members and the public about the Act. *See* Defs' SMF ¶4. But a plaintiff's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Far from being an *injury* caused by the Act, SisterSong's expenditures, "if anything … appear[] to be squarely within [SisterSong's] core activities." *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 230 (S.D.N.Y. 2019). SisterSong's "efforts and expense to advise others how to comport with the law, or … to change the law" simply do not confer standing to bring suit. *Fair Elections Ohio*, 770 F.3d at 460.[3]

### B.    The Provider Plaintiffs lack third-party standing.

The other Plaintiffs—who are abortion providers—have also failed to demonstrate standing. Once again, Plaintiffs are not alleging that any of *their own* constitutional rights are violated; instead, they are seeking to vicariously assert the rights of non-party women who might need abortions in the future. To have third-party standing, the Providers must show *both*

---

[3] This case is distinguishable from cases addressing the standing of organizations that use "testers" to identify discrimination. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Under the Fair Housing Act, *all persons* have "a legal right to truthful information about available housing." *Id.* at 373. It thus makes sense to allow an organization to bring suit when its "testers" are unlawfully steered to certain housing. But nothing in *Havens* suggests that a non-regulated organization like SisterSong can establish standing merely by taking voluntary steps to advise others about the law.

(1) that they have "a 'close' relationship with the person who possesses the right," and (2) that there is a "'hindrance' to the possessor's ability to protect [her] own interests." *Kowalski*, 543 U.S. at 130. The record shows neither.

Defendants gave Plaintiffs ample opportunity to establish their third-party standing, asking them to "identify the facts you intend to rely upon to establish your standing to bring this action on behalf of patients." Plaintiffs responded with *one sentence*: "[T]he unique physician-patient relationships that Plaintiffs establish are close, intimate, and special, and create ethical and medical duties." Defts' SMF ¶5.

That single, conclusory sentence is insufficient to establish Plaintiffs' ability to litigate other people's constitutional rights. First, there is no "hindrance" if the purportedly represented third parties have proven capable of representing themselves before, even if they are disadvantaged. *See, e.g.*, *Kowalski*, 543 U.S. at 131-32. That is clearly not the case here, and Plaintiffs have not argued otherwise. There are countless instances of individual women suing to vindicate their own claimed abortion rights. *See, e.g.*, *Azar v. Garza*, 138 S. Ct. 1790 (2018); *Doe v. Bolton*, 410 U.S. 179 (1973). Plaintiffs have not even argued, much less proven, that Georgia women would be unable to bring their own constitutional challenges to the Act.

Second, the relationship between the Providers and the allegedly represented third parties cannot be "close" if their interests potentially conflict. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 & n.7 (2004). Such a potential conflict exists here. The Act would protect women's

health by requiring women who seek elective abortions to obtain pre-heartbeat abortions early in pregnancy, which are safer than abortions later in pregnancy. *See*, *e.g.*, Compl. ¶62, ECF No. 1 (acknowledging that "the risks associated with pregnancy increase as pregnancy advances"). Yet the Providers have an independent economic incentive in preserving *their own* ability to continue offering later-term abortions. Those differing incentives at least give rise to a *potential* conflict of interest that should foreclose the Providers from bringing constitutional claims on behalf of absent third parties. At the very least, the Providers bear the evidentiary burden of establishing a "close" relationship with the women on whose behalf they are purporting to sue, which they have not even attempted to satisfy.

Finally, this Court may consider deferring consideration of this issue until the Supreme Court issues its decision in *June Medical Services v. Gee*, No 18-1460. In *June Medical*, the Supreme Court granted Louisiana's cross-petition for certiorari to address whether abortion providers can be "presumed to have third-party standing to challenge health and safety regulations on behalf of their patients absent a 'close' relationship with their patients and a 'hindrance' to their patients' ability to sue on their own behalf." The Supreme Court's resolution of that issue could be relevant to the question of whether the Provider Plaintiffs have third-party standing here.

## II.     Defendants Are Entitled To Summary Judgment on Plaintiffs' Void-for-Vagueness Claim.

Defendants are entitled to summary judgment on Count II of the complaint because there are no disputed issues of material fact and Plaintiffs' void-for-vagueness claim fails as a matter of law.

**A.**     To survive a vagueness challenge, a law need only "give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see United States v. Marino-Garcia*, 679 F.2d 1373, 1383-84 (11th Cir. 1982). Thus, a statute is void-for-vagueness in only one of two circumstances: either (1) the "regulated parties [do not] know what is required of them," or (2) the law lacks the "precision and guidance [that is] necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox Television Stations*, 567 U.S. at 253; *see, e.g.*, *United States v. Ruggiero*, 791 F.3d 1281, 1290-91 (11th Cir. 2015).

For the plaintiff to prevail on a constitutional vagueness claim, the challenged law must be "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application," *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009), or "mislead[] the individuals it regulates into thinking that their conduct is not proscribed." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 421-24 (6th Cir. 2014) (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048 (1991)). "[A] regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." *Fox Television Stations*, 567 U.S. at 253.

A vagueness claim is always difficult to win, and is an even steeper uphill climb when brought as a *facial* challenge. *See Ruggiero*, 791 F.3d at 1290-91; *Trustees of Indiana Univ. v. Curry*, 918 F.3d 537, 540-42 (7th Cir. 2019) (abortion law not facially vague). A law cannot be facially invalidated as vague unless it is vague in "all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Facial vagueness occurs only "'when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct.'" *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013) (quoting *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982)).

**B.**     Section 3(b) of the Act—which is the focus of Plaintiffs' vagueness claim—easily passes constitutional muster. Leaving no room for guesswork, it precisely defines "natural person" as "any human being, including an unborn child." Act §3(b). It then further defines "unborn child" as "a member of the species Homo sapiens at any stage of development who is carried in the womb." *Id.* §3(e)(2). These definitions are clear and unambiguous, and Plaintiffs do not assert otherwise.

Plaintiffs nonetheless allege that the Act's definition of "natural person" is facially vague because it could potentially make *other* criminal

statutes vague. *See* Compl. ¶¶38, 68, ECF No. 1. But that reasoning gets things exactly backwards. Rather than taking a statute and speculating or hypothesizing about potentially vague applications, the proper analysis in a facial challenge like this case is to identify *valid* applications. As the Eleventh Circuit has held, the "possibility of a valid application necessarily precludes facial invalidity." *Indigo Room*, 710 F.3d at 1302; *see also Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 580 (5th Cir. 2012) (facial vagueness cannot be established through "speculation about possible vagueness in hypothetical situations not before the court" (cleaned up) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000))). In short, if there could be any non-vague applications of the statute, a "series of as applied challenges is a more appropriate forum for challenging [its] other, potentially more vague applications …." *Alabama Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1140 & n.3 (11th Cir. 2014); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 19-20 (2010).

Here, there is no question that the Act's definition of "natural person" has clear, constitutionally valid applications. In the Act itself, Section 3(d) provides: "Unless otherwise provided by law, any *natural person*, including an unborn child with a detectable human heartbeat, shall be included in population based determinations." Act §3(d) (emphasis added). In that provision, Section 3(b)'s definition functions clearly and unambiguously, by providing that unborn children with detectable heartbeats shall be included in the State's population-based determinations. This provision alone shows

18

the "possibility of a valid application" that "necessarily precludes facial invalidity." *Indigo Room*, 710 F.3d at 1302.

In speculating about potentially vague applications of the definition of "natural person," Plaintiffs focus heavily on the crime of reckless conduct. They suggest that it is now unclear whether "routine" or "specialized" medical treatment of a pregnant woman could give rise to criminal liability if that treatment causes side effects that "accidentally" harm an unborn child. *See* Compl. ¶¶38, 68, ECF No. 1. The notion that the Act could somehow be read to criminalize standard medical care provided in good faith is baseless. The reckless conduct statute, by its plain terms, only criminalizes the conscious disregard of a "*substantial and unjustifiable* risk that [the defendant's] act or omission will cause harm or endanger the safety of the other person." O.C.G.A. §16-5-60(b) (emphasis added). It strains credulity to suggest that medically indicated care intended to treat a medical condition in a pregnant woman would be deemed an "unjustifiable" risk. Indeed, Plaintiffs have conceded that "[a]ll medical care entails the risk of unintentional harm to the patient; clinicians, including clinicians treating patients who are pregnant, might be pregnant, or might become pregnant, accept that risk and weigh that risk against the benefits of treatment." Defts' SMF ¶6.

Plaintiffs' theory also ignores the Georgia courts' authoritative interpretation of the reckless-conduct statute. In *State v. Boyer*, 270 Ga. 701 (1999), the Georgia Supreme Court rejected a vagueness challenge to the reckless-conduct statute brought by a daycare worker who was convicted for

handling an infant roughly. As the court explained, a conviction under the reckless conduct statute requires disregarding a risk that is "clear, substantial, and unjustifiable," where "*disregarding such a risk would be a gross deviation from the standard of care a reasonable person would exercise in the situation.*" *Id.* at 702 (emphasis added). As long as any medical treatment of a pregnant woman comports with the "standard of care a reasonable person would exercise in the situation," it simply would not be deemed reckless conduct. *Id.* Plaintiffs' speculation otherwise provides no basis to find the definition of "natural person" unconstitutionally vague on its face. *See also Harris v. McRae*, 448 U.S. 297, 311 n.17 (1980) ("[T]he Hyde Amendment is not void for vagueness because … the sanction provision in the Medicaid Act contains a clear *scienter* requirement under which good-faith errors are not penalized …."); *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (*scienter* requirement "alleviate[s] vagueness concerns").

Plaintiffs' proposed remedy of invalidating the entire Act is also grossly overbroad. Even assuming the new definition of "natural person" introduced ambiguity into other provisions of the Georgia Code, this Court could resolve that ambiguity by imposing a limiting construction rather than striking down the entire law. *See Gonzales*, 550 U.S. at 153 ("The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." (cleaned up)); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509-12 (1972) (declining to consider pre-enforcement facial vagueness challenge until state courts were given opportunity to provide a

limiting construction); *Lakey*, 667 F.3d at 581 (rejecting facial challenge in light of limiting construction that included *scienter* requirement).

In any event, it would exceed the proper scope of this Court's remedial power to invalidate *every single application* of the definition of "natural person" based on nothing more than Plaintiffs' speculation about a handful of other statutes. Any such issues must be addressed on an as-applied basis through more tailored relief.

**C.**    Finally, Plaintiffs allege in passing that the Act is vague because of a risk of "arbitrary and discriminatory enforcement." Compl. ¶78, ECF No. 1. But, once again, a facial challenge is the wrong vehicle for this allegation. "[R]egardless of the risk of discriminatory enforcement, a court may not hold that this risk invalidates the statute in a pre-enforcement facial attack." *Busbee*, 673 F.2d at 1231. That is because, in a pre-enforcement challenge, "no evidence has been, or could be, introduced to indicate whether the Act has been enforced in a discriminatory manner or with the aim of inhibiting constitutionally protected conduct." *Gonzales*, 550 U.S. at 150 (cleaned up); *see also Fla. Businessmen for Free Enter. v. City of Hollywood*, 673 F.2d 1213, 1220 (11th Cir. 1982). "[S]uch allegations amount merely to generalized, hypothetical threats, which are [nonjusticiable]." *City of S. Miami v. DeSantis*, 2019 WL 6769665, at *22 (S.D. Fla. 2019).

Moreover, the problem of ripeness is "much the same" as the problem of standing in these types of cases. *Elend v. Basham*, 471 F.3d 1199, 1210-12 (11th Cir. 2006). Without a "credible threat of prosecution," a request for

"injunctive and declaratory relief" against a state is "especially unfit for judicial decision." *Id.* And the bare fear of prosecution without a "direct and immediate dilemma" is not a sufficient "hardship." *DeSantis*, 2019 WL 6769665, at *18-23 (cleaned up). Plaintiffs' boilerplate invocation of the risk of "arbitrary or discriminatory enforcement" is not ripe for this Court's review and cannot support a facial vagueness challenge to the LIFE Act.[4]

### III. Defendants Are Entitled To Partial Summary Judgment On The Ground That All Provisions Of The Act Not Specifically Found Unconstitutional Are Severable.

Plaintiffs ask this Court to invalidate *every word* of the LIFE Act. It is undisputed, however, that the Act's provisions that address matters other than post-heartbeat abortions or the definition of "natural person" cause them no harm. *See* Defts' SMF ¶1; Tr. 69-70, ECF No. 99 (Plaintiffs' counsel: "I guess I just need to say I don't want to stand here and represent that Plaintiffs would have independent standing to challenge Sections 5, 6, and 12. They wouldn't."). The only ground on which Plaintiffs challenge those other provisions is that they are purportedly "non-severable." Defts' SMF ¶1. But Plaintiffs have not come close to showing that the Act as a whole is non-severable and must be invalidated in its entirety.

---

[4] This Court previously held that plaintiffs were likely to succeed on their vagueness claim due to "unanswered questions" about how the new definition of "natural person" would apply to other provisions of the Act, combined with a "risk of arbitrary or discriminatory enforcement." Order at 38-40, ECF No. 97. But Defendants respectfully submit that the legal standard for prevailing on a facial vagueness claim is more demanding than the one this Court previously applied, as shown in the cases cited above.

Severability is governed by state law, *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988), and "Georgia law favors [severability]." *E.g.*, *Roma Outdoor Creations, Inc. v. City of Cumming, Ga.*, 2009 WL 10700286, at *3 (N.D. Ga. 2009) (citing cases). Georgia courts will therefore sever an offending provision as long as doing so would "correspond with the main purpose which the legislature sought to accomplish" and "enough remains to accomplish that purpose." *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*, 266 Ga. 393, 404 (1996) (cleaned up). Relatedly, if an invalid provision is "independent" and can "stand[] alone as a separate and distinct obligation," it is severable. *Lamar Advert. Co. v. City of Douglasville, Ga.*, 254 F. Supp. 2d 1321, 1336-38 (N.D. Ga. 2003); *see, e.g.*, *Kennedy v. Avondale Estates, Ga.*, 414 F. Supp. 2d 1184, 1219-20 (N.D. Ga. 2005). Finally, an express severability clause in the challenged statute creates a presumption of severability. *See Union City*, 266 Ga. at 404.

Even if this Court finds Section 4(b)'s restrictions on post-heartbeat abortions or the definition of "natural person" unconstitutional, those provisions could easily be severed from the rest of the Act. Because the Act contains an express severability clause, *see* Act §14, each of its provisions must be presumed severable. And multiple other provisions of the Act operate independently of the challenged provisions while still advancing the Legislature's purpose of supporting pregnant women and unborn children. The Act's findings in Section 2 do not impose regulations or restrictions *at all*; they merely announce "the policy of the State of Georgia" about the

importance of protecting unborn life. *See* Act §2. The Act's provision of tax deductions to pregnant women to ease their financial burden—and its provisions that ensure absent fathers support their unborn children through alimony and child support—advance the statutory purposes while operating independently of the provisions Plaintiffs challenge. *See id.* §§5, 12. The same is true of the Act's provisions about tort damages for the parents of a victim of fetal homicide and the new measures for counting population, both of which are entirely independent of the challenged provisions. *See id.* §§3(d), 6.

Moreover, the Act's informational, reporting, and informed-consent provisions may be related to abortion, *see id.* §§7, 8, 9, but Plaintiffs have not specifically challenged them, and the Supreme Court has upheld similar measures for decades. *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 872 (1992) (even in "the earliest stages of pregnancy," state may enact laws to ensure that abortion decisions are "thoughtful and informed").

Courts that have found abortion restrictions to be unconstitutional have repeatedly severed those provisions from other aspects of the legislation at issue. The Supreme Court has emphasized that a reviewing court must "prefer … to sever [the abortion law's] problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-32 (2006); *see Leavitt v. Jane L.*, 518 U.S. 137, 139-44 (1996). That is, a federal court must "try not to nullify more of a legislature's work than is necessary." *Ayotte*, 546 U.S. at 328-32. Applying those principles, a district court in Arkansas deemed several testing and disclosure requirements to be

severable from a provision restricting post-heartbeat abortions. *See Edwards v. Beck*, 8 F. Supp. 3d 1091, 1101 (E.D. Ark. 2014) ("[T]he remaining heartbeat testing and disclosure requirements are independently capable of furthering the stated purpose of Act 301, to protect unborn children ….").

Several other federal courts have similarly severed restrictions on abortion that were deemed unconstitutional while upholding the remainder of the challenged statutes. *See, e.g.*, *Falls Church Med. Ctr., LLC v. Oliver*, 412 F. Supp. 3d 668, 685-86, 705 (E.D. Va. 2019) (severing invalid provisions but upholding "the remainder of the regulations at issue … which were not shown to be otherwise unduly burdensome"); *Reprod. Health Servs. v. Marshall*, 268 F. Supp. 3d 1261, 1293-94 (M.D. Ala. 2017) (severing invalid provisions where doing so "will not cause the statute to be meaningless").

In its preliminary injunction order, this Court held that provisions such as Sections 5, 6, and 12 were not severable because they cross-referenced the definition of "detectable human heartbeat" from Section 3 and were "mutually dependent" upon that definition. *See* Order at 44-45, ECF No. 97. But Plaintiffs have never challenged the definition of "detectable human heartbeat" as vague or unconstitutional; they have instead challenged the definition of "natural person." *See* Compl. ¶38, 68, 76, ECF No. 1. And even if one or more of the definitions in Section 3 had some unconstitutional *applications*—which the State disputes—any such applications could easily be severed from provisions of the Act that operate independently, such as the child support, tax deduction, and tort damages provisions.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendants' motion for summary judgment and/or partial summary judgment.

Respectfully submitted,

Dated:     February 20, 2020          /s/ *Jeffrey M. Harris*

Christopher M. Carr                        Jeffrey M. Harris (*pro hac vice*)
  *Attorney General of Georgia*            Steven C. Begakis (*pro hac vice*)
Andrew A. Pinson (Bar #584719)         CONSOVOY MCCARTHY PLLC
  *Solicitor General*                     1600 Wilson Boulevard, Suite 700
Georgia Department of Law              Arlington, VA 22209
40 Capitol Square SW                   (703) 243-9423
Atlanta, GA 30334
(404) 651-9453                         Patrick Strawbridge (*pro hac vice*)
                                       CONSOVOY MCCARTHY PLLC
                                       Ten Post Office Square
                                       8th Floor South, PMB #706
                                       Boston, MA 02109
                                       (617) 227-0548

*Counsel for Defendants*

26

## CERTIFICATE OF COMPLIANCE

I certify that this brief uses 13-point Century Schoolbook in compliance with Local Rule 5.1(B).

/s/ *Jeffrey M. Harris*
Jeffrey M. Harris (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was electronically filed with the Clerk of Court using the CM/ECF system on February 20, 2020, thereby serving all counsel of record.

/s/ *Jeffrey M. Harris*
Jeffrey M. Harris (*pro hac vice*)