[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 20-13024

_____

SISTERSONG WOMEN OF COLOR REPRODUCTIVE JUSTICE COLLECTIVE,
FEMINIST WOMEN'S HEALTH CENTER,
PLANNED PARENTHOOD SOUTHEAST, INC.,
ATLANTA COMPREHENSIVE WELLNESS CLINIC,
ATLANTA WOMEN'S MEDICAL CENTER, et al.,

                                               Plaintiffs-Appellees,

*versus*

GOVERNOR OF THE STATE OF GEORGIA,
in his official capacity,
CHRISTOPHER MICHAEL CARR,
Georgia Attorney General, in his official capacity
KATHLEEN TOOMEY,
Georgia Commissioner for Department of Public Health,

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 2 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 2 of 16

2               Opinion of the Court               20-13024

in her official capacity,
JOHN S. ANTALIS,
M.D.,
GRETCHEN COLLINS,
M.D.,
DEBI DALTON,
M.D.,
E. DANIEL DELOACH,
M.D.,
CHARMAINE FAUCHER,
PA-C,
SHAWN M. HANLEY,
C.F.S.P.,
ALEXANDER S. GROSS,
M.D.,
THOMAS HARDIN, JR.,
M.D.,
JUDY GARDNER,
C.F.A.,
MATTHEW W. NORMAN,
M.D.,
DAVID W. RETTERBUSH,
M.D.,
ANDREW REISMAN,
M.D.,
JOHN JEFFREY MARSHALL,
M.D.,

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 3 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 3 of 16

20-13024          Opinion of the Court                    3

BARBY J. SIMMONS,

D.O.,

RICHARD L. WEIL,

M.D., Members of the Georgia Composite Medical Board,

in their official capacities,

LASHARN HUGHES,

M.B.A., Executive Director of Georgia Composite Medical Board,

in her official capacity,

STACEY JACKSON,

District Attorney for the Chattahoochee Judicial Circuit,

in her official capacity,

FLYNN BROADY, JR.,

Acting District Attorney for the Cobb Judicial Circuit,

in her official capacity,

PATSY AUSTIN-GATSON,

District Attorney for the Gwinnett Judicial Circuit,

in his official capacity,

SHALENA COOK JONES,

District Attorney for the Eastern Judicial Circuit,

in her official capacity,

FANI T. WILLIS,

District Attorney for Fulton County,

in her official capacity,

                                                       Defendants-Appellants,

4       Opinion of the Court       20-13024

SHERRY BOSTON,

District Attorney for DeKalb County,

in her official capacity,

                     Defendants.

────────────────

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-02973-SCJ

────────────────

Before WILLIAM PRYOR, Chief Judge, LAGOA, Circuit Judge, and SCHLESINGER,[*] District Judge.

WILLIAM PRYOR, Chief Judge:

  This appeal concerns whether Georgia can prohibit some abortions and whether its redefinition of "natural person" to include unborn children is unconstitutionally vague on its face. The district court entered a summary judgment for the abortionists challenging the Georgia law and permanently enjoined state officials from enforcing it. But intervening Supreme Court precedent, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022),

---

[*] The Honorable Harvey Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

Case 1:19-cv-02973-SCJ Document 161 Filed 07/20/22 Page 5 of 18
USCA11 Case: 20-13024 Date Filed: 07/20/2022 Page: 5 of 16

20-13024 Opinion of the Court 5

makes clear that no right to abortion exists under the Constitution, so Georgia may prohibit them. And the expanded definition of natural person is not vague on its face. We vacate the injunction, reverse the judgment in favor of the abortionists, and remand with instructions to enter judgment in favor of the state officials.

## I. BACKGROUND

Georgia enacted the Living Infants Fairness and Equality (LIFE) Act in 2019. 2019 Ga. Laws Act 234 (H.B. 481). Section 3 of the Act amends the definition of "[n]atural person" in the Georgia Code to mean "any human being including an unborn child." *Id.* § 3(b) (internal quotation marks omitted). And it defines "[u]nborn child" as "a member of the species of Homo sapiens at any stage of development who is carried in the womb." *Id.* § 3(e)(2) (internal quotation marks omitted). Section 4 prohibits abortions after a fetal heartbeat is detected with enumerated exceptions. *Id.* § 4(b). The Act also clarifies that removal of an "ectopic pregnancy" or "a dead unborn child caused by spontaneous abortion" is not an "abortion." *Id.* § 4(a)(1) (internal quotation marks omitted). Sections 5 through 12 amend other provisions of the Georgia Code involving child support, tort recovery for fetal homicide, informed consent for women seeking abortions, tax benefits, and related issues. *Id.* §§ 5–12.

In June 2019, a group of abortion-rights advocacy groups, providers, and practitioners filed a two-count complaint naming as defendants multiple state officials in their official capacities. The abortionists' first count alleged that the Act's prohibition on post-

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 6 of 18
USCA11 Case: 20-13024    Date Filed: 07/20/2022    Page: 6 of 16

6                          Opinion of the Court                      20-13024

fetal-heartbeat abortions violated women's substantive due process rights under the Fourteenth Amendment. *See* H.B. 481 § 4. The abortionists' second count alleged that the definition of "[n]atural person" in section 3 of the Act, *see id.* § 3 (internal quotation marks omitted), is unconstitutionally vague on its face. The abortionists' complaint requested preliminary and permanent injunctions restraining the enforcement of the Act, a declaratory judgment that the Act violates the Fourteenth Amendment, and attorney's fees. *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. §§ 2201–02.

The abortionists moved for, and the district court granted, a preliminary injunction. The district court explained that the abortionists met the burden for a preliminary injunction because the abortionists were likely to succeed on the merits and would suffer irreparable harm, the balance of hardships weighed in their favor, and the public interest was served by a preliminary injunction. The district court entered a preliminary injunction prohibiting the state officials from enforcing any provision of the Act.

After discovery, the parties moved for summary judgment. The abortionists argued that the prohibition of pre-viability but post-fetal heartbeat abortions was unconstitutional under the Fourteenth Amendment as interpreted in *Roe v. Wade*, 410 U.S. 113, 153 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 845–46 (1992). The state officials countered that the abortionists lacked standing to challenge the prohibition.

The abortionists also argued that the definition of natural person in the Act was unconstitutionally vague. They argued that

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 7 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 7 of 16

20-13024                Opinion of the Court                7

redefining natural person to encompass the unborn throughout the Georgia Code gave rise to "uncertainty about what actions give rise to criminal and civil liability under numerous" Georgia laws. And the abortionists argued that the Act did not give them "fair notice" and lacked "explicit standards" to apply. (Internal quotation marks omitted.)

The state officials responded that the definition was not unconstitutionally vague. The state officials contended that to succeed on a facial vagueness challenge, the abortionists must show that there was no "possibility of a valid application" of the statute. (Quoting *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013).) And the state officials argued that an example of a valid application exists in the Act where it provides that "[u]nless otherwise provided by law, any natural person, . . . with a detectable human heartbeat, shall be included in population based determinations." H.B. 481 § 3(d) (internal quotation marks omitted). The state officials argued that the definition "functions clearly" there "by providing that unborn children with detectable heartbeats shall be included in the State's population-based determinations."

The district court granted the abortionists' motion for summary judgment, entered a permanent injunction prohibiting the state officials from enforcing the Act, and declared that sections 3 and 4 of the Act violated the Fourteenth Amendment. The district court explained that, under the *Roe* and *Casey* regime, "a state" could not "prohibit or ban abortions at any point prior to viability,"

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 8 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 8 of 16

8                    Opinion of the Court                    20-13024

so the Act violated the Fourteenth Amendment because it prohibited pre-viability abortions. The district court also explained that section 3 was unconstitutionally vague because the abortionists "are forced to hypothesize about ways in which their conduct might violate statutes amended by the [Act]" and gave some examples that it thought were applications of the definition that gave too much discretion to prosecutors. And the district court explained that all the permanent-injunction factors supported entering a permanent injunction, and that the other sections of the Act were inseverable from the abortion prohibition and the definition of natural person.

The state officials appealed, and all parties agreed at oral argument that we should stay this appeal pending a decision in *Dobbs*. After the Supreme Court issued its opinion in *Dobbs*, we requested and received supplemental briefs from the parties addressing the effect of that opinion on this appeal. We now lift our earlier stay and consider this appeal in the light of *Dobbs*.

## II. STANDARD OF REVIEW

"We review a summary judgment *de novo*." *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021) (internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that the prohibition of abortion after fetal heartbeat in the Act is subject only to rational basis review, and we explain that abortion

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 9 of 18
USCA11 Case: 20-13024    Date Filed: 07/20/2022    Page: 9 of 16

20-13024               Opinion of the Court                    9

prohibitions survive rational basis review. Second, we explain that the definition of natural person is not facially void for vagueness.

### A. Abortion Prohibitions Are Constitutional.

In their supplemental brief, the abortionists concede that *Dobbs* dooms their challenge to the Act's prohibition of abortions after detectable fetal heartbeat. They also concede that their arguments that other provisions of the Act are inseverable from the abortion prohibition are now irrelevant. We agree.

As the Supreme Court explained in *Dobbs*, "[t]he Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision." *Dobbs*, 142 S. Ct. at 2242. As a result, there is no such thing as a constitutional right to abortion, and "rational-basis review is the appropriate standard" for challenges to abortion prohibitions. *Id.* at 2283. Laws that regulate abortion are "entitled to a strong presumption of validity." *Id.* at 2284 (internal quotation marks omitted). So, we "must" sustain an abortion regulation "if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* The Supreme Court held in *Dobbs* that "respect for and preservation of" unborn life "at all stages of development" is categorically a legitimate state interest. *Id.* Other legitimate interests often implicated by abortion regulations include "the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 10 of 18
USCA11 Case: 20-13024    Date Filed: 07/20/2022    Page: 10 of 16

10                    Opinion of the Court                    20-13024

prevention of discrimination on the basis of race, sex, or disability." *Id.*

The Supreme Court explained that its decisions to the contrary in *Roe* and *Casey* were "egregiously wrong from the start." *See id.* at 2243. The Supreme Court declared that *Roe* was nothing but an exercise of "raw judicial power," *id.* at 2265 (quoting *Roe*, 410 U.S. at 222 (White, J., dissenting)), that "resemble[d] the work of a legislature," *id.* at 2266. And it held "that *Roe* and *Casey* must be overruled." *Id.* at 2242.

As a result, we acknowledge that *Dobbs* abrogates many previous decisions of this Court. An intervening decision of the Supreme Court overrules our precedents whenever the decision is "clearly on point." *See Garrett v. Univ. of Ala. Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003); *see also* BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT § 60, at 492 (2016) ("Generally speaking, a panel decision may be overruled . . . by . . . a contrary opinion of the Supreme Court . . . ."). *Dobbs* clearly holds that a supposed right to abortion is not protected by any constitutional provision and the only constitutional scrutiny to which abortion regulations are subject is rational-basis review. *Dobbs*, 142 S. Ct. at 2242, 2283–84. To the extent that previous decisions of this Court apply any heightened review or state that any provision of the Constitution protects a right to abortion, *Dobbs* abrogated those decisions. *See, e.g.*, *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1179–80 (11th Cir. 2020); *W. Ala. Women's Ctr. v. Williamson*, 900 F.3d 1310, 1320–21 (11th Cir. 2018); *Planned*

Case 1:19-cv-02973-SCJ Document 161 Filed 07/20/22 Page 11 of 18
USCA11 Case: 20-13024 Date Filed: 07/20/2022 Page: 11 of 16

20-13024　　　　　　　Opinion of the Court　　　　　　　11

*Parenthood Ass'n of Atlanta Area v. Miller*, 934 F.2d 1462, 1471–82 (11th Cir. 1991); *Scheinberg v. Smith*, 659 F.2d 476, 482–87 (5th Unit B. Oct. 1981); *Poe v. Gerstein*, 517 F.2d 787, 794 (5th Cir. 1975).

Georgia's prohibition on abortions after detectable human heartbeat is rational. *See* H.B. 481 § 4(b). "[R]espect for and preservation of prenatal life at all stages of development" is a legitimate interest. *Dobbs*, 142 S. Ct. at 2284. The Georgia Legislature's findings acknowledge a state interest in "providing full legal recognition to an unborn child." H.B. 481 § 2(4). That "legitimate interest[] provide[s] a rational basis for" and "justif[ies]" the Act. *Dobbs*, 142 S. Ct. at 2284.

### B. The Definition of Natural Person Is Not Void for Vagueness on Its Face.

The parties continue to dispute whether the Act's definition of natural person is unconstitutionally vague on its face. The Act defines a "'[n]atural person'" as "any human being including an unborn child." H.B. 481 § 3(b) (internal quotation marks omitted). And the Act clarifies that an "[u]nborn child" is "a member of the species Homo sapiens at any stage of development who is carried in the womb." *Id.* § 3(e)(2) (internal quotation marks omitted). This new definition applies throughout the Georgia Code. *See id.* § 3.

The vagueness doctrine is concerned principally with notice and arbitrary enforcement. "An unconstitutionally vague law invites arbitrary enforcement . . . if it leaves judges and jurors free to

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 12 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 12 of 16

12                    Opinion of the Court                    20-13024

decide, without any legally fixed standards, what is prohibited and what is not in each particular case . . . ." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (internal quotation marks omitted). A law fails to provide notice when it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Put another way, "[v]agueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Indigo Room, Inc.*, 710 F.3d at 1301 (internal quotation marks omitted) (alteration in original). The inquiry into whether a statute is vague looks only to whether the "language of the [law] itself" is vague. *Id.* at 1302 (internal quotation marks omitted).

"[F]or a facial" void-for-vagueness challenge to succeed, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* (internal quotation marks omitted). We have explained that "[f]acial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct." *Id.* (internal quotation marks omitted) (alteration in original). "[I]f persons of reasonable intelligence can derive a core meaning from a statute, then the enactment may validly be applied to conduct within that meaning and the possibility of a valid application necessarily precludes facial invalidity." *Id.* (internal quotation marks omitted).

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 13 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 13 of 16

20-13024              Opinion of the Court                    13

The abortionists earlier attempted to avoid this demanding standard by arguing that the definition "renders the Georgia Code vague in a manner that chills constitutionally protected conduct, namely the provision of abortion." They argued that "[t]he Supreme Court has made clear that in the abortion context . . . facial relief is appropriate when a vague law would impose criminal penalties." (Citing *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 451 (1983).) But Dobbs forecloses that argument because it makes clear that abortion is not constitutionally protected. *Dobbs*, 142 S. Ct. at 2242.

Because an abortion-specific argument is foreclosed, the abortionists now argue that the redefinition implicates two other kinds of conduct protected by the Constitution. First, they contend that the redefinition burdens a physicians' right to pursue their chosen profession of "providing care for pregnant [women]." Second, they argue that the definition burdens the "right to procreate." These arguments fail.

*Dobbs* requires us to apply the normal standard to the abortionists' facial claim. The Supreme Court explained that abortion litigation "distort[ed] . . . many important but unrelated legal doctrines." *Dobbs*, 142 S. Ct. at 2275. One of the distorted doctrines named by the Supreme Court was "the strict standard for facial constitutional challenges." *Id.* The Supreme Court followed that statement with a footnote citation that compares the standards for facial constitutional challenges from *Casey* and *United States v. Salerno*, 481 U.S. 739 (1987). *See Dobbs*, 142 S. Ct. at 2275 n.60. In

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 14 of 18
USCA11 Case: 20-13024   Date Filed: 07/20/2022   Page: 14 of 16

14                         Opinion of the Court                    20-13024

*Casey*, the Supreme Court explained that a provision was facially unconstitutional because "in a large fraction of the cases in which [the provision] [was] relevant, it [would] operate as a substantial obstacle" to the exercise of a (former) constitutional right. *Casey*, 505 U.S. at 895. In *Salerno*, the Supreme Court explained in a non-abortion context that a "facial challenge to a legislative [a]ct is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid." *Salerno*, 481 U.S. at 745.

Because we take the Supreme Court at its word, we must treat parties in cases concerning abortion the same as parties in any other context. See *Dobbs*, 142 S. Ct. at 2275–76. And to the extent that this Court has distorted legal standards because of abortion, we can no longer engage in those abortion distortions in the light of a Supreme Court decision instructing us to cease doing so. *See, e.g.*, *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684–87 (11th Cir. 2001) (pseudonymity); *Campbell v. United States*, 962 F.2d 1579, 1584 (11th Cir. 1992) (suggesting in dicta that a state supreme court may not declare abortion against the public policy of a state).

Under the proper standard, the Act's definition of natural person is not unconstitutionally vague on its face. When focusing on the text, as we must, it is hard to see any vagueness. *See Indigo Room, Inc.*, 710 F.3d at 1302. The Act defines a natural person to include unborn humans in the womb at any stage of development. *See* H.B. 481 § 3(b), (e). A person of reasonable intelligence is

Case 1:19-cv-02973-SCJ   Document 161   Filed 07/20/22   Page 15 of 18
USCA11 Case: 20-13024    Date Filed: 07/20/2022    Page: 15 of 16

20-13024               Opinion of the Court                15

capable of understanding that the "core meaning [of]" the provision is to expand the definition of person to include unborn humans who are carried in the womb of their mother at any stage of development. *See Indigo Room, Inc.*, 710 F.3d at 1302. To be sure, there might be vague applications of that definition in other provisions of the Georgia Code, but challenges to those applications—like the arguments raised in the abortionists' supplemental brief about potential applications to constitutionally protected conduct—are properly brought in an as-applied manner. On its face, the statute is not void for vagueness.

A classic example illustrates the lack of facial vagueness in the Act. Assume a legislature promulgates multiple laws regulating what one can do with vehicles in parks. *See* H. L. A. Hart, *Positivism and the Separation of Law and Morals*, 71 HARV. L. REV. 593, 607 (1958). Later, the legislature enacts a modified definition of vehicle for those laws that reads "vehicle means any automobile and includes bicycles." The statute clarifies that "as used in the vehicles-in-parks code, 'bicycle' means any device with two wheels in tandem, handlebars for steering, a saddle seat or seats, and pedals which are used by a human to propel the device." *See Bicycle*, WEBSTER'S NEW INT'L DICTIONARY (2d ed. 1959). In no context would we declare such a law void for vagueness on its face, and the only reason we could treat the Act any differently is if we treated statutes concerning abortion less favorably. Because a constitutional right to abortion does not exist, we decline to engage in abortion exceptionalism.

16                    Opinion of the Court                    20-13024

## IV. CONCLUSION

We **VACATE** the injunction, **REVERSE** the judgment in favor of the abortionists, and **REMAND** with instructions to enter judgment in favor of the state officials.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 20, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-13024-GG
Case Style: SisterSong Women of Color Rep., et al v. Governor of the State of GA, et al
District Court Docket No: 1:19-cv-02973-SCJ

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against appellees</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Joseph Caruso, GG</u> at <u>(404) 335-6177</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs